Filed 1/31/06 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2006 ND 30

In the Interest of D.D., a Child

In the Interest of K.D., a Child

Tamera Ressler, L.S.W., Petitioner and Appellee

v.

Director, Cass County Social Services, 

R.S., C.D., D.D., K.D., and 

Kathy Kassenborg, Lay Guardian ad Litem, Respondents

R.S., Respondent and Appellant

Nos. 20050176

In the Interest of D.D., a Child

In the Interest of K.D., a Child

Tamera Ressler, L.S.W., Petitioner and Appellee

v.

Director, Cass County Social Services, 

R.S., C.D., D.D., K.D., and 

Richard Edinger, Guardian ad Litem, Respondents

R.S., Respondent and Appellant

Nos. 20050177

Appeal from the Juvenile Court of Cass County, East Central Judicial District, the Honorable Wade L. Webb, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Constance Louise Cleveland, P.O. Box 3106, Fargo, N.D. 58108-3106, for petitioner and appellee.

Douglas W. Nesheim, Johnson, Ramstad & Mottinger, PLLP, 15 9th Street South, Fargo, N.D. 58103-1830, for respondent and appellant.

Interest of D.D.

Nos. 20050176
 
& 20050177

Maring, Justice.

[¶1] R.S. (“Rhonda”)
(footnote: 1) appealed a juvenile court order affirming a judicial referee’s order terminating her parental rights to her two children, D.D. (“Debra”) and K.D. (“Karen”).  We hold the juvenile court did not clearly err in finding clear and convincing evidence Debra and Karen are deprived, the causes and conditions of deprivation are likely to continue, and as a result of the continued deprivation, Debra and Karen will probably suffer serious physical, mental, or emotional harm if Rhonda’s parental rights are not terminated.  We affirm.

I

[¶2] Rhonda and the father of the two children, C.D. (“Charles”), have been involved in a relationship for several years, but have never been married.  At times they have resided together in the states of Washington, Minnesota, and North Dakota.  Debra was born in 1997, and Karen was born in 2000.  In May 2003, Cass County Social Services initiated a child protection assessment after receiving a report of suspected child abuse or neglect of Debra and Karen, and determining that Rhonda had been intoxicated and unable to care for her children.  In her investigation, Tamera Ressler, a social worker with Cass County, discovered a long history of child protection problems dating back to 1998, and involving two other jurisdictions—Clay County, Minnesota, and the state of Washington.

[¶3] While in Washington, Rhonda pled guilty to a 1998 charge of perpetrating domestic violence against Charles.  She also apparently failed to comply with a domestic violence evaluation or treatment and re-offended while on probation.  Further, in October 2002, Rhonda pled guilty to reckless endangerment for an incident involving the children, in which she was intoxicated and entrusted them to a registered sex offender.  Rhonda left Washington without completing court-ordered treatment.

[¶4] In November 2001, while Rhonda and Charles were living in Moorhead, Minnesota, Debra and Karen were the subject of a protective supervision order in Clay County.  Clay County Social Services had been involved with the family in 2000 and 2001.  The Clay County order granted the County protective services and required the family to participate in home services.  Although Rhonda completed a chemical dependency examination, she did not complete the recommended treatment and follow-through.  Rhonda also did not complete a parental capacity examination, and ultimately, in-home services were terminated due to  her lack of participation.  Rhonda’s Clay County social worker last saw Rhonda in January 2002, when she was reportedly moving to West Fargo to stay with relatives.  The Clay County social worker subsequently contacted Cass County Social Services to notify them of the Clay County court order involving the family.

[¶5] Subsequent to the May 2003 report of suspected child neglect in Cass County, Cass County received a July 2003 child protection report that the children had been placed in protective custody following Rhonda’s arrest for driving under the influence and reckless endangerment.  Rhonda was found driving erratically and intoxicated with the children in her car.  Cass County then filed formal deprivation proceedings regarding the children.  In September 2003, the children were adjudicated to be deprived.

[¶6] Cass County retained custody of the children after September 2003, and the children were placed in the care of relatives.  After developing a plan for services, treatment, and family preservation, the children were reunified with Rhonda and Charles in December 2003.  On New Year’s Eve in 2003, however, there was a domestic violence incident in which Charles had been drinking and fought with, and physically abused, Rhonda in the presence of the children.  As a result, Charles was charged criminally, and the children were again briefly placed with relatives.  In early January 2004, a meeting was held with Rhonda to assess the children’s safety.  Rhonda denied drinking during the New Year’s Eve confrontation.  She then indicated her relationship with Charles was over, and the children were returned to her.  At that time, Charles was again in jail and had a one year no-contact order with Rhonda.

[¶7] In April 2004, however, Rhonda voluntarily had the no-contact order lifted, and Charles returned to the home.  In May 2004, Cass County received another report from treatment providers that Rhonda was suspected of drinking, which Rhonda denied.  In July 2004, Charles was arrested and charged with driving under the influence and reckless endangerment.  During this incident, Charles had picked up Rhonda from a party and an argument ensued as they were driving home.  When Rhonda attempted to leave the car, Charles ran over her with the vehicle.  Rhonda was hospitalized with her injuries.  Although Charles indicated a neighbor was watching Debra and Karen, the children were home alone when a relative was sent to pick them up.

[¶8] In September 2004, Cass County received another child protection report from a treatment provider who suspected Rhonda had been drinking.  Then, in late September 2004, Rhonda was again arrested for driving under the influence and incarcerated, and the children were returned to the care of relatives.  Earlier in September, Cass County had a team meeting with Rhonda and mental health service providers in an attempt to develop a successful combination of services because none of the services offered to that point appeared to be working.  In November 2004, Rhonda’s probation from earlier convictions was also revoked, and she was sentenced to prison for a period of eighteen months with credit for time served, which continued through the trial of this case.

[¶9] At trial, Pat Podoll, a Cass County Social Services supervisor, testified the children had repeatedly been taken out of the parental home beginning with the initial placement with relatives from July 13, 2003, to December 23, 2003.  According to Podoll, the children were also out of the parental home from January 2, 2004, to January 5, 2004, from July 26, 2004, to August 2, 2004, and from late September 2004, up to and beyond the February 2005 trial of this case.  Most of the children’s time out of the parental home was due to Rhonda’s incarceration.

[¶10] While it is unnecessary to list here the entire array of services and assistance offered to Rhonda and attempted during the time of her involvement with Cass County, the record is replete with evidence of those services.  Notably, Rhonda received treatment from Bruce Worner, a licensed addiction counselor at Southeast Human Service Center.  According to Worner, Rhonda met the criteria for a diagnosis of an addictive disorder and warranted treatment.  Worner testified Rhonda had some mental health problems that also needed treatment.  A treatment plan was developed; however, Rhonda’s progress was sporadic because, according to Worner, she did not believe she had a problem that warranted any treatment and resisted the treatment process.  Worner testified that unless Rhonda made some significant changes in attitude and receptivity to treatment, success in dealing with her chemical addiction was not likely.  Worner also testified Rhonda had a very poor prognosis for long-term sobriety.

[¶11] Rhonda received services in early 2003 from Kathleen Moraghan, a clinical nurse specialist with Southeast Human Service Center, who has a master’s degree in adult psychiatric mental health nursing and 20 years of experience.  Moraghan testified that she was involved in the assessment and evaluation of Rhonda as part of a team at Southeast and that Rhonda was diagnosed with panic disorder, agoraphobia, and major depression, in addition to alcohol dependence and cluster B personality traits.  Moraghan testified the recommended treatment was medication, which had already been prescribed by a primary care doctor.  After initial treatment, Rhonda did not show up for a medications review in April, and Moraghan had no further contact from Rhonda for approximately six months.  Rhonda did not resume treatment with Moraghan until November 2003.  However, even then Rhonda was not forthcoming with information, and she failed to attend appointments with Moraghan.  

[¶12] Rhonda had also been referred to Melissa Longtine, a counselor at the Rape and Abuse Crisis Center, to address problems relating to domestic violence.  Longtine testified that after their initial meeting Rhonda attended two additional counseling sessions, but did not complete counseling or therapy. 

[¶13] There was also testimony at trial from Dr. Tim Wenstrom, a clinical psychologist specializing in children.  Dr. Wenstrom testified he had met with both Rhonda and Debra to address reported behavioral problems with Debra.  Based upon Rhonda’s descriptions and medical history, Dr. Wenstrom made an initial diagnosis of ADHD, Oppositional Defiant Disorder, along with adjustment disorder with mixed disturbance of emotions and conduct.  Dr. Wenstrom developed a behavioral plan with Rhonda including structured consistency and positive reinforcement at home for Debra, but Dr. Wenstrom also was concerned about descriptions of physical altercations witnessed by Debra in the home.  Dr. Wenstrom testified that his observations during sessions with Debra were not consistent with the behavior descriptions given by Rhonda.  Dr. Wenstrom testified that Rhonda insisted she was implementing the behavioral plan, but she did not feel it was working.  Rhonda instead asked Dr. Wenstrom to increase certain medications for Debra, which he could not approve because he was not licensed to prescribe or dispense medication.  Although Dr. Wenstrom recommended additional appointments for treatment, Rhonda did not follow through.

[¶14] In October 2004, Tamera Ressler petitioned to terminate the parental rights of Rhonda and Charles.  Ressler also moved for a permanency hearing and review of custody based upon the finding of deprivation.  The proceedings were consolidated and tried before a judicial referee in February 2005.  Charles consented to the termination of his parental rights, and Rhonda proceeded to trial.  On March 16, 2005, the judicial referee issued an order terminating parental rights of Rhonda and Charles.

[¶15] In terminating parental rights, the judicial referee found a history of child protection involvement dating back to 1998 and spanning three states.  The judicial referee found Rhonda had failed to address mental health, chemical use, and chemical use dependency issues, which compromised her ability and availability as a parent and repeatedly compromised the safety of the children.  Further, the judicial referee found Rhonda had been provided extensive services for those issues, but she had not modified her behavior in any meaningful way and had not actively participated in any of the services.  The judicial referee specifically stated:

In this particular case, the children have been involved in child protection matters since shortly after birth.  The mother has been criminally convicted of subjecting the children to danger in two states, first by permitted [sic] a known sex offender to have contact with the children, and secondly by driving while intoxicated with the children in the car.  The incarceration and unavailability, coupled with the chemical addiction of the mother, is likely to continue.  

The father has requested that his parental rights be terminated.

There is no reason to believe the deprivation of the children is not likely to continue, in fact, it is likely to continue, as even when the mother is released from incarceration, her behaviors are likely to repeat, if history is any indicator.  As a result, the children have and are likely to continue to suffer serious physical, mental, or moral, or emotional harm if they are not afforded the stability necessary to form appropriate emotional bonds with their care providers or if they are forced to linger in foster care until the mother is available or able to establish herself in an appropriate parental role.  

It is not in the children’s best interests to continue in foster care in order to determine whether these options will ever materialize.

 

[¶16] Rhonda requested review of the judicial referee’s decision by the juvenile court.  The juvenile court adopted the referee’s findings and made additional findings.  Specifically, the juvenile court also found that Rhonda has unaddressed mental health, chemical use and chemical dependency issues, which have compromised her parenting ability and availability and the children’s safety.  Although the juvenile referee in her findings did not go into great detail regarding Rhonda’s mental health problems, the record contains evidence of these continuing problems and the juvenile court made additional findings of sufficient particularity.  The court found ample evidence to suggest deprivation is likely to continue and the children are suffering, and are likely to suffer, serious physical, mental, moral, or emotional harm.  The court stated that Rhonda “[had] not made reasonable efforts to work toward reunification and her compliance and progress has not been satisfactory, specifically with regard to her mental health and chemical dependency.”

[¶17] The court further found, “Services have been provided to [Rhonda] in an attempt to remedy the causes of the deprivation and that these attempts have been active and reasonable, but [Rhonda] has not invested herself in the process and her participation has been sporadic.  There is no basis to believe that there will be any significant improvement in the ability of [Rhonda] if given more time.  Several of [Rhonda’s] service providers stated that her past behavior is the best predictor of future behavior.”  The court concluded it is likely the causes of deprivation will not end and cannot be remedied in a reasonable time frame.  Finally, the court found clear and convincing evidence that Debra and Karen would be harmed if parental rights were not terminated, and termination was in the best interests of the children for a safe, stable environment. 

II

[¶18] Under N.D.C.C. § 27-20-44(1)(b)(1), parental rights may be terminated if there is clear and convincing evidence:  (1) the child is a deprived child; (2) the conditions and causes of the deprivation are likely to continue; and (3) the child is suffering, or will in the future, probably suffer serious physical, mental, moral or emotional harm.  
Interest of T.F.
, 2004 ND 126, ¶ 7, 681 N.W.2d 786.  Effective March 1, 2004, N.D.R.Civ.P. 52(a) was amended to provide that findings of fact in juvenile matters shall not be set aside by this Court unless they are clearly erroneous.  
Interest of T.F.
, at ¶ 8.  “A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law.”  
Interest of B.J.K.
, 2005 ND 138, ¶ 10, 701 N.W.2d 924.  “We give ‘due regard to the juvenile court’s opportunity to judge the credibility of witnesses.’”  
Id.
  

A

[¶19] Rhonda does not claim the juvenile court clearly erred in finding her children were deprived as defined by N.D.C.C. § 27-20-02(8).  She argues, however, the juvenile court erred in finding there was clear and convincing evidence to support a finding of deprivation that was likely to continue and that the children would likely suffer harm absent a termination of parental rights.  She argues the juvenile court erred because the children’s best interests would have been better served by a guardianship arrangement rather than termination.  She also asserts reasonable efforts were not made to reunify the family.

[¶20] In determining whether the causes and conditions of deprivation will continue or will not be remedied, evidence of past deprivation alone is not enough.  
Interest of E.R.
, 2004 ND 202, ¶ 7, 688 
N.W.2d
 384.  There also must be prognostic evidence that forms the basis for a reasonable prediction of continued or future deprivation.  
Id.
; 
Interest of T.K.
, 2001 ND 127, ¶ 14, 630 
N.W.2d
 38.  “Although incarceration, by itself, does not establish abandonment of a child for purposes of terminating parental rights, the probability of serious mental and emotional harm to the child may be established by prognostic evidence that a parent’s current inability to properly care for the child will continue long enough to render improbable the successful assimilation of the child into a family if the parent’s rights are not terminated.”  
Interest of E.R.
, at ¶ 8 (citing 
In re T.F.
, 2004 ND 126, ¶ 12, 681 
N.W.2d
 786).  Additionally, failure to follow the recommendations for addiction recovery “demonstrates a serious indifference toward [one’s] responsibilities and obligations as a parent.”  
Interest of S.F.
, 2000 ND 161, ¶ 11, 615 
N.W.2d
 511 (internal quotation marks omitted).

[¶21] Rhonda’s history of unresolved mental health problems and ongoing alcohol abuse does not indicate the children’s deprivation will cease in any reasonable amount of time.  By Rhonda’s own admission and demonstrated behavior, she continues to relapse into patterns which endanger her children.  Rhonda claims her association with Charles contributes to her inability to stay with the services and plans provided.  However, she has continued over a long period of time to associate with Charles, even to the extent of having no-contact orders lifted.  It is her own voluntary association with Charles, willingness to expose her children to domestic violence, failure to follow through with treatment, and continued abuse of alcohol that serves as prognostic evidence in this case.  “When a parent, through voluntary actions, without reasonable justification, makes herself unavailable to care for and parent a young child, the child should not be expected to wait or assume the risk involved in waiting for permanency and stability in her life.”  
Interest of E.R.
, 2004 ND 202, ¶ 9, 688 
N.W.2d
 384; 
see also
 
Interest of C.R.
, 1999 ND 221, ¶ 12, 602 
N.W.2d
 520.  There is clear and convincing evidence to support the juvenile court’s finding that the children’s deprivation is likely to continue.  We are not left with a definite and firm conviction the juvenile court made a mistake in finding the children’s deprivation was likely to continue, and we conclude that finding is not clearly erroneous.

B

[¶22] Rhonda argues there is not clear and convincing evidence the children would likely suffer harm absent termination of her parental rights.  The juvenile court, however, specifically found clear and convincing evidence that, absent the termination, the children would be harmed.  

[¶23] To terminate parental rights, evidence must show that as a result of the continued deprivation, the child is suffering, or will in the future probably suffer physical, mental, moral, or emotional harm.  
Interest of E.R.
, 2004 ND 202, ¶ 10, 688 N.W.2d 384.  “Assisting a parent to establish an adequate environment for the child by offering long term and intensive treatment is not mandated if it cannot be successfully undertaken in a time frame that would enable the child to return to the parental home without causing severe dislocation from emotional attachments formed during long-term foster care.”  
Id.
 at ¶ 11; 
see also
 
Interest of T.K.
, 2001 ND 127, ¶ 15, 630 N.W.2d 38; 
Interest of L.F.
, 1998 ND 129, ¶ 28, 580 N.W.2d 573.  The record supports the juvenile court’s finding there is clear and convincing evidence Debra and Karen would likely suffer harm if termination is not granted, and we conclude that finding is not clearly erroneous.  

III

[¶24] Rhonda argues reasonable efforts were not made to prevent removal of the children and to reunify the family.  Rhonda also asserts more intensive, in-patient services should have been offered.  

[¶25] Absent aggravated or other specified circumstances, reasonable efforts must be made to preserve and reunify families.  
See
 N.D.C.C. § 27-20-32.2(2).  “Reasonable efforts” means the exercise of due diligence, by the agency granted authority over the child under N.D.C.C. ch. 27-20, to use appropriate and available services to meet the needs of the child and the child’s family in order to prevent the removal of the child from the child’s family or, after removal, to use appropriate or available services to eliminate the need for removal and to reunite the child and child’s family.  N.D.C.C. § 27-20-30.2(1).  There is evidence in the record that Cass County made reasonable efforts to reunite and preserve the family; however, Rhonda’s failure to follow through with provided services and her subsequent incarceration hindered any plans for reunification.

[¶26] It is not enough that a parent indicates a desire to improve behavior; rather, the parent must be able to demonstrate present capacity, or capacity within the near future, to be an adequate parent.  
McBeth v. M.D.K.
, 447 N.W.2d 318, 322 (N.D. 1989).  There is sufficient evidence in the record showing that extensive assistance and plans were offered.  Rhonda’s own actions and voluntary conduct in failing to complete treatment and in violating the law, thereby endangering her children and resulting in her own incarceration, prevented a successful reunification.  We reject Rhonda’s claims that reasonable efforts and sufficient services were not made available to her.  

IV

[¶27] We hold the juvenile court’s finding that there is clear and convincing evidence to support the termination of Rhonda’s parental rights to both Debra and Karen is not clearly erroneous.  The order is affirmed.

[¶28] Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
The parties’ names are pseudonyms.